UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD., THL TUBE AND PIPE INDUSTRIES LLC, AND KHK SCAFFOLDING AND FORMWORK LLC,<br><br>          Plaintiffs,<br>    v.<br><br>UNITED STATES,<br><br>          Defendant. | Court No. 23-00113 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, Universal Tube and Plastic Industries, Ltd.; THL Tube and Pipe Industries LLC; and KHK Scaffolding and Formwork LLC ("Plaintiffs" or "Universal"), by and through their counsel, allege and state, as follows:

## JURISDICTION

1. Plaintiffs bring this action pursuant to, and in accordance with, sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii)), contesting certain aspects of the final results of the 2020-2021 administrative review of the antidumping duty order on *Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates*, Case No. A-520-807, issued by the U.S. Department of Commerce ("Commerce"), International Trade Administration, as they apply to Plaintiffs.  See *Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 28,483 (May 4, 2023), and accompanying Issues and Decision Memorandum (April 27, 2023).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

3. Plaintiffs are foreign producers and exporters of subject merchandise, circular welded carbon-quality steel pipe from the United Arab Emirates, and therefore are interested parties within the meaning of 19 U.S.C. § 1677(9)(A). Plaintiffs requested an administrative review, and were selected for individual examination by Commerce as a collective affiliated entity. Plaintiffs participated in the administrative review proceeding through the submission of questionnaire responses and through the filing of factual information and legal arguments to address substantive case issues. Accordingly, Plaintiffs have standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

4. The *Final Results*, which are being challenged herein, were published in the *Federal Register* on May 4, 2023. *See* 88 Fed. Reg. 28,483. On June 5, 2023, Plaintiffs timely filed a Summons initiating this action within thirty days (plus weekend days) of the publication of the *Final Results*, and Plaintiffs are timely filing the Complaint today within thirty days of the filing of the Summons. The filing of the Summons and Complaint thus are timely in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of the U.S. Court of International Trade.

## STANDARD OF REVIEW

5. This Court reviews actions concerning Commerce determinations brought under 19 U.S.C. § 1516a(a)(2) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Court No. 23-00113                                                                                                                Complaint

## PROCEDURAL HISTORY

6. On February 4, 2022, Commerce initiated the fifth administrative review of the antidumping duty order on circular welded carbon-quality steel pipe ("CWP") from the United Arab Emirates. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 6,487 (Dep't Commerce Feb. 4, 2022) ("*Initiation Notice*"). Commerce's period of review ("POR") was December 1, 2020 through November 30, 2021.

7. In March 2022, Commerce issued a memorandum stating that it had selected the Universal Plaintiffs and Ajmal Steel Tubes & Pipe Ind. LLC as mandatory respondents in the 2020-2021 administrative review.

8. In April and May 2022, Universal submitted timely responses to section A (i.e., the section relating to general information) and to the remaining sections of the questionnaire (i.e., sections B, C, D, and E, the sections covering comparison market sales, U.S. sales, cost of production (COP)/constructed value (CV), and further manufacturing, respectively). As part of its responses, Universal submitted substantial information demonstrating that the companies had experienced significant cost changes (*i.e.*, changes that exceeded 25 percent) between the high and low quarterly costs of manufacture during the POR. In addition, Universal demonstrated through substantial evidence that there was a linkage between the costs of manufacturing changes and the sales prices during the POR.

9. In November and December 2022, Universal provided responses to additional supplemental questionnaires, including voluminous additional information on its significantly different quarterly costs of production and its correspondingly different quarterly sales prices.

10. On January 31, 2020, Commerce issued its preliminary results of the 2020-2021 administrative review. *See Circular Welded Carbon-Quality Steel Pipe from the United Arab*

*Emirates: Preliminary Results of Antidumping Duty Administrative Review; 2020-2021*, 87 Fed. Reg. 79,862 (Dep't Commerce Dec. 28, 2022) ("*Preliminary Results*") and accompanying unpublished Decision Memorandum for the Preliminary Results (Dep't Commerce Dec. 20, 2022).

11. In its *Preliminary Results*, Commerce found that there was a linkage between Universal's changing sales prices and costs of manufacture during the period of review. Thus, Commerce determined that a shorter cost-averaging period approach, based on a quarterly average costs of production, was appropriate for Universal because Commerce found significant cost changes in costs of manufacture as well as reasonable linkage between costs and sales prices. Commerce also conducted a "differential pricing" analysis to determine whether it was appropriate to calculate Universal's dumping margin using an average-to-transaction method or an average-to-average method. Based on its analysis, which examined whether there existed a pattern of prices for comparable merchandise that differed significantly among purchasers, regions, or time periods, Commerce found that a percentage of the value of Universal's U.S. sales passed its Cohen's *d* test. As a result, Commerce found that a pattern of prices that differed significantly among purchasers, regions, and time periods existed, which warranted the application of the average-to-transaction method to those sales that passed the Cohen's *d* test and the average-to-average method to those sales that did not pass the Cohen's d test in the calculation of Universal's weighted-average dumping margin.

12. In February 2023, interested parties submitted case and rebuttal briefs addressing various issues in the *Preliminary Results*, including Commerce's preliminary decision with respect to the differential pricing analysis applied to Universal.

13. In March 2023, Commerce held a public hearing to address issues contained in

the case and rebuttal briefs based on a request by Universal for a hearing.

      14.      On May 4, 2023, Commerce published its *Final Results* in which it affirmed its preliminary decision that a percentage of the value of Universal's U.S. sales passed the Cohen's *d* test, and that a pattern of prices that differed significantly among purchasers, regions, and time periods thus existed warranting the application of the average-to-transaction method to those sales that passed the Cohen's *d* test in the calculation of the weighted-average dumping margin for Universal. The legal bases for Commerce's *Final Results* were set forth in an unpublished Issues and Decision Memorandum dated April 27, 2023.

### ISSUES PRESENTED BY THE ACTION AND PLAINTIFFS' STATEMENT OF CLAIMS

      15.      In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's *Final Results* in its 2020-2021 antidumping duty administrative review were unsupported by substantial record evidence and/or were otherwise not in accordance with law.

### COUNT ONE

      16.      Paragraphs 1 through 15 are incorporated herein by reference.

      17.      Section 777A(d) of the Tariff Act indicates that Commerce may determine whether subject merchandise is being sold in the United States at less than fair value by comparing the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise if there is a pattern of prices for comparable merchandise that differ significantly among purchasers, regions, or periods of time. Consistent with 19 CFR 351.414(c)(1) and section 777A(d)(1)(B) of the Act, Commerce applied a "differential pricing" analysis to determine whether application of the alternate average-to-transaction comparison method would be appropriate in this review. In conducting this analysis,

Commerce evaluated all of Universal's U.S. sales to determine whether there was a pattern of prices that differed significantly among purchasers, regions, and time periods. Commerce defined purchasers based on consolidated customer codes, determined regions based on zip codes, and defined time periods by the quarter within the POR based upon the U.S. date of sale.

18. In the first stage of the differential pricing analysis, Commerce applied the "Cohen's *d* test," and found that the extent to which prices in particular time periods differed from the prices of all other sales was large (i.e., the sales to particular time periods passed the Cohen's *d* test because the calculated Cohen's *d* coefficient exceeded the large (i.e., 0.8) threshold). But Commerce previously had determined in this review (1) that Universal had significant cost changes between its high and low quarterly costs of manufacturing during the POR, (2) that there was a close linkage between Universal's changing selling prices and quarterly costs of manufacturing for the same periods, and (3) that the change in costs of manufacturing and selling prices for Universal between quarters was so significant that it warranted a departure from Commerce's standard annual costing approach and price comparison methodology. Having already determined that Universal's selling price differences among quarters were driven by cost differences, it was not appropriate for Commerce to conclude that price differences among Universal's U.S. sales in the four quarters of the POR were due, in part, to differential pricing. Because Commerce attributed quarterly price differences across quarters to imputed masked dumping when Commerce already had determined that Universal's price differences between and among quarters were due instead to significant cost differences, Commerce's differential pricing analysis was arbitrary and unsupported by substantial evidence.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

19. For the reasons stated above, Plaintiffs respectfully request that the Court:

**Court No. 23-00113**                                                                                                                  **Complaint**

      (a)    enter judgment in Plaintiffs' favor;

      (b)    declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

      (c)    remand these matters to Commerce for redetermination consistent with the Court's opinion, including a recalculation of Plaintiffs' antidumping duty margin; and

      (d)    provide such other relief as the Court deems just and proper.

                                                 Respectfully submitted,

                                                 /s/ Robert G. Gosselink
                                               Robert G. Gosselink
                                               Jonathan M. Freed

                                               TRADE PACIFIC PLLC
                                               700 Pennsylvania Avenue, SE
                                               Suite 500
                                               Washington, DC  20003
                                               Tel:  (202) 223-3760
                                               Fax:  (202) 223-3763
                                               Email:  rgosselink@tradepacificlaw.com

Dated:  June 22, 2023                                   *Counsel to Plaintiffs*