## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD.; THL TUBE AND PIPE INDUSTRIES LLC; AND KHK SCAFFOLDING AND FORMWORK LLC, )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>WHEATLAND TUBE COMPANY, )<br><br>Defendant-Intervenor. ) | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 23-00113 |

## REPLY BRIEF OF PLAINTIFFS
## UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD.; THL TUBE AND PIPE INDUSTRIES LLC; AND KHK SCAFFOLDING AND FORMWORK LLC

Submitted by:

Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760

Counsel to Universal Tube and Plastic
Industries, Ltd.; THL Tube and Pipe
Industries LLC; and KHK Scaffolding
and Formwork LLC

Dated: March 6, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………………………………….i

TABLE OF AUTHORITIES…………………………………………………………………...ii

I.     INTRODUCTION…………………………………………………………...1

II.    ARGUMENT……………………………………………………………...2

       A.     Defendant and Wheatland Fail to Recognize and Address the Actual Basis of Universal's Appeal ..........................................................................................2

       B.     Defendant and Wheatland Rely on Inapposite Judicial Authority..........................5

       C.     Plaintiffs Did Not Fail to Exhaust Administrative Remedies ................................7

III.   CONCLUSION..……………………………………………………………..9

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 608 Fed.Appx. 948 (Fed.Cir.2015)......................................................................................................................6, 7

*JBF RAK LLC v. United States*, 790 F.3d 1358 (Fed. Cir. 2015)................................................6, 7

*NSK Ltd. v. United States*, 390 F.3d 1352 (Fed. Cir. 2004)............................................................7

*Mittal Canada, Inc. v. United States*, 30 C.I.T. 1565 (2006)..........................................................7

*Nan Ya Plastics Corp., Ltd. v. United States*, 128 F. Supp. 3d 1345 (Ct. Int'l Trade 2015)………………………………………………………………………………………6, 7

*Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231 (Ct. Int'l Trade 2009).............8

*Trust Chem Co. Ltd. v. United States*, 791 F. Supp. 2d 1257 (Ct. Int'l Trade 2011) .....................8

**<u>Statutes</u>**

19 U.S.C. 1677f-1(d) ..................................................................................................................7, 8

**REPLY BRIEF OF PLAINTIFFS UNIVERSAL TUBE AND
PLASTIC INDUSTRIES, LTD.; THL TUBE AND PIPE INDUSTRIES LLC;
AND KHK SCAFFOLDING AND FORMWORK LLC**

## I.    INTRODUCTION

Plaintiffs, Universal Tube and Plastic Industries, Ltd.; THL Tube and Pipe Industries LLC; and KHK Scaffolding and Formwork LLC ("Universal" or "Plaintiffs"), submit this reply to the briefs of Defendant, the United States, and Defendant-Intervenor Wheatland Tube Company, which responded to the claim raised by Universal in its Rule 56.2 motion for judgment on the agency record.  See Def.'s Resp. to Pls.' Mot. J. Upon Agency Record, January 24, 2024, ECF No. 27 ("Def. Resp. Br."); Def. Int.'s Resp. in Opp. to Pls.' Mot. J. Upon Agency Record, January 24, 2024, ECF No. 26 (Def. Int. Resp. Br.").  Universal's motion for judgment on the agency record contested a single aspect of the U.S. Department of Commerce's final results of administrative review of the antidumping duty order on circular welded carbon-quality steel pipe from the United Arab Emirates.  See Pl.'s Rule 56.2 Mot. J. Agency R., October 26, 2023, and Mem. Supp. Mot. J. Upon Agency Record, October 26, 2024, ECF No. 23 ("Universal's Brief"); *see also Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 28,483 (Dept. Commerce May 4, 2023), PD 129 ("*Final Results*") and accompanying Issues and Decision Memorandum (April 27, 2023) ("*Final Decision Memorandum*"), PD 124.

In this case, the Court must remand Commerce's use of cross-quarterly selling price comparisons in its differential pricing analysis to determine whether a pattern of prices existed that differed significantly among purchasers, regions, and time periods because Commerce had already separately determined that it could not and would not compare Universal's selling prices across different quarters of the POR to calculate Universal's dumping margin.

In its response brief, Defendant fails to address the fundamental basis of Universal's

appeal.  Defendant assigns to Plaintiffs arguments that Universal did not make and attributes to

Universal positions that Universal does not hold.  Defendant also fails to identify anywhere in

the administrative record where Commerce responded to Plaintiffs' specific challenge.  For its

part, Defendant-Intervenor similarly misreads Plaintiffs' argument, ignores portions of the

administrative record that undermine Commerce's determination, and repeats Commerce's

conclusory remarks.  In sum, Defendant's and Defendant-Intervenor's explanations for

Commerce's internally inconsistent sales comparisons cannot be ascribed to a difference in view

or the product of agency expertise.  The conflicting approaches Commerce adopted when it

calculated Universal's dumping margin represented inconsistent action – and thus necessarily

were unsupported by substantial evidence – and must be remanded for reconsideration.

## II.    <u>ARGUMENT</u>

### A.    **Defendant and Wheatland Fail to Recognize and Address the Actual Basis of Universal's Appeal**

Plaintiff's appeal is limited to a single issue, but Defendant's response brief suggests that

Defendant still does not understand Universal's principle argument.  After discussing the Court's

standard of review for two pages (*see* Def. Resp. Br. at 6-7) and explaining Commerce's method

for determining costs of production and Commerce's differential pricing Cohen's *d* test for seven

pages (*see* Def. Resp. Br. at 6-7) – with which Universal mostly agrees – Defendant finally

addresses Universal's legal arguments, and immediately misstates Universal's main contention:

> Universal argues that because Commerce calculated a quarterly rather than
> annual weighted-average cost of production based on a finding that the cost of
> production changed throughout the period of review, Commerce was not
> permitted to conduct a differential analysis that considered whether there were
> significant differences in prices across quarters during the period of review.

Def. Resp. Br. at 14.  Defendant's summary statement is both an incorrect and over-simplified

description of Universal's claim that Commerce adopted an internally inconsistent and arbitrary approach for calculating Universal's dumping margin in this review.  While changing costs were the initial reason why Commerce adopted a quarterly cost approach in this review, it was Commerce's subsequent decision that it *could not compare selling prices across POR quarters* for purposes of calculating Universal's dumping margin that invalidated as inconsistent Commerce's separate decision to compare selling prices across POR quarters for purposes of determining whether differential pricing existed.

Defendant's misapprehension is evidenced further by its claim that "Universal's argument is essentially an argument that the differential pricing analysis cannot consider differences in price cause by changes in the cost of production."  Def. Resp. Br. at 14.  But Universal's argument is not based on a causation analysis.  As explained in Universal's initial 56.2 brief, "{t}o be clear, Universal challenges only the arbitrary and inconsistent decision by Commerce to proceed with cross-quarterly selling price comparisons under one provision of the statute while refusing to make such cross-quarterly comparisons under another."[1]  At its core, Universal's argument is that it is irrational, unreasonable, and inconsistent for Commerce to reject sales comparisons across POR quarters to determine dumping while at the same time rely on sales comparisons across POR quarters to determine the methodology to be used to calculate dumping.  This internal inconsistency argument is not one that the Courts have previously addressed.  It is also not an issue that Commerce addressed in its *Final Results*.

---

[1]  Wheatland also erroneously (and exclusively) focuses on a causation analysis, claiming that "Commerce is not required to consider the reasons for an existing pattern of export prices – only whether such a pattern exists.  Thus it does not matter that one potential explanation for a pattern of price differences among time periods might be the fact that a respondent's costs fluctuated over those time periods."  Def. Int. Resp. Br. at 5 and pages 7-12 (addressing only causation issues under Commerce's differential pricing analysis).  Because Wheatland does not respond to Universal, Wheatland's response generally can be disregarded in its entirety.

That Defendant misunderstands Universal's argument also is illustrated in its Statement of Facts in which Defendant discusses in quick succession (1) Commerce's conclusion in the Preliminary Results that Universal experienced significant cost changes during the POR; (2) Commerce's decision to use quarterly weighted-average costs instead of annual weighted-average costs to calculate the cost of production; and (3) Commerce's differential pricing analysis for Universal's U.S. sales, without ever addressing the critical point that Commerce also adopted an entirely different dumping calculation approach that ensured that sales made in one quarter of the POR were not compared to sales made in another quarter. Specifically, Commerce revised its dumping margin calculation program (1) to override the normal hierarchy of contemporaneous months for price averaging established in 19 C.F.R. § 351.414(e); and (2) to restrict all price-to-price comparisons of identical and similar products to sales made within the same 3-month quarters of the POR. *See* Commerce's Market-Economy Macros Program (December 22, 2022), at Lines 4854 and 4971, CD 222; *see also* Commerce's Preliminary Margin Calculation Program (December 22, 2022), at Line 1002, CD 225, and Commerce's Preliminary Comparison Market Program (December 22,2022), at Line 1532, CD 224 (for programming that established the U.S. and comparison market quarters).

But Defendant's Statement of Facts entirely ignores this substantial sales comparison methodological change. And when Defendant finally addresses Commerce's departure from normal practice to eliminate cross-quarterly sales comparisons, it does so only in the context of faulting Plaintiffs for suggesting that Commerce found such sales to be "incomparable" or that such sales comparisons would be "improper." *See* Def. Resp. Br. at 16 (claiming that {t}hese are Universal's words"). But Commerce's decision not to compare sales across POR quarters when calculating Universal's dumping margin was not accidental; it was not a decision made

willy-nilly.  Rather, Commerce intentionally departed from the regulatory contemporaneous

month matching hierarchy of 19 C.F.R. § 351.414(e) (i.e., same month, then three months back,

and then two months forward), and modified its margin calculation program specifically to

prevent any inter-quarter sales price comparisons.  *See* Commerce's Market-Economy Macros

Program (December 22, 2022), at Lines 4854 and 4971, CD 222.  If Defendant objects to the

characterization of cross-quarterly sales comparisons as "improper," then it might prefer one of

the following descriptions of Commerce's action:

- Commerce adopted a new approach for its margin calculations that specifically precluded sales comparisons across POR quarters; or

- Commerce intentionally rewrote its dumping program to make sure that cross-quarter sales comparisons would not be made; or

- Commerce modified its margin calculation program so that inter-quarter sales comparisons would be impossible.

- Commerce changed its margin calculation program to ensure that Universal's dumping margin would never be based on comparisons of sales made in different quarters.

Any one of these descriptions might assuage Defendant's concerns with rhetoric, Def.

Resp. Br., at 16, but none would change that Commerce adopted a specific approach to eliminate

the comparisons of sales across quarters when calculating Universal's dumping margin while

Commerce continued to compare sales across quarters to determine the methodology it would

use to calculate Universal's dumping margin.  While proceeding with cross-quarterly selling

price comparisons under one provision of the statute at the same time that it refused to make

such cross-quarterly comparisons under another, Commerce reach a final results determination

that was arbitrary and internally inconsistent.

### B.    Defendant and Wheatland Rely on Inapposite Judicial Authority

Because Defendant and Wheatland continue to believe incorrectly that this appeal is

about causation, the parties fail to recognize that there is no judicial precedent that provides a

basis for determining this matter. Both Defendant and Wheatland contend that *JBF RAK*,

*Borusan*, and *Nan Ya* are controlling authority, but the issues addressed in those cases do not

reflect Universal's claim in this case. In *JBF RAK LLC v. United States*, the Court of Appeals

addressed whether it was an abuse of discretion for Commerce to refuse to consider evidence

that a pricing pattern identified by Commerce was not due to targeted sales, but instead was for

"a valid business purpose." *JBF RAK*, 790 F.3d 1358, 1368 (Fed. Cir. 2015). In *Borusan*

*Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, the Court of Appeals considered

whether Commerce was required to evaluate if a pattern of prices identified by Commerce in a

"targeted dumping" was due to "increases in raw material costs," and not due to any intentional

targeted dumping scheme. *See Borusan*, 608 Fed. Appx. 948 (Fed. Cir. 2015). And, in *Nan Ya*,

the "gravamen of Nan Ya's claim" was that Commerce erred by failing to consider evidence

indicating that differences in the prices that Nan Ya charged for PET film during the POR

correlated with fluctuations in the cost of raw materials that Nan Ya used to produce its

merchandise. *Nan Ya Plastics Corporation, Ltd. v. United States*, 128 F. Supp. 3d 1345, 1347

(Ct. Int'l Trade 2015). All of these cases involved whether Commerce had an obligation to

consider *why* there was a pattern of export prices for comparable merchandise that differed

significantly among purchasers regions, or time periods. None of these case addressed whether it

was appropriate for Commerce to adopt a differential pricing analysis approach that conflicted

directly with its chosen method for determining dumping.

Moreover, not one of these cases involved or addressed the methodology Commerce

actually adopted to calculate the dumping margin. And nowhere in any of these cases is there a

discussion of the internal inconsistency that exists in this case where Commerce adopted

diametrically opposite sales comparison approaches – on one hand, Commerce intentionally

engineered a departure from its normal sales comparison approach to avoid any possible cross-quarterly sales comparisons and, on the other, Commerce intentionally included cross-quarterly sales comparisons in its differential pricing test.  Defendant belittles Universal's argument, claiming that Universal "is just using different words to make the same argument as the plaintiffs in *JBF RAK*, *Nan Ya* and *Borusan*."  Def. Resp. Br. at 17.  But Universal is not alleging that Commerce failed to consider *why* Universal's prices were different or what the *cause* of such differences might have been.  Nor is Universal challenging Commerce's observation that the statute does not contain an intent requirement for any pricing patterns.  *See Final Decision Memorandum*, at 14-15, PD 124.  Rather, Universal is challenging Commerce's inconsistent approach of using cross-quarterly selling price comparisons under one provision of the statute while refusing to make such cross-quarterly comparisons under another.  The Court has long held that it is unreasonable for Commerce to adopt positions that are internally inconsistent, and the Court should hold Commerce to the same standard in this case.  *See NSK Ltd. v. United States*, 390 F.3d 1352 (Fed. Cir. 2004) (remanding where Commerce's classification of repacking expenses was "internally inconsistent" with Commerce's treatment of certain other expenses, and where Commerce failed to explain these inconsistencies); *see also Mittal Canada, Inc. v. United States*, 30 C.I.T. 1565 (2006) (concluding that when an agency's interpretation of a statute is internally inconsistent, its claim to reasonableness is obviously compromised).

### C.    Plaintiffs Did Not Fail to Exhaust Administrative Remedies

Defendant alleges in its brief that "Universal failed to exhaust its arguments that Commerce could have considered other periods of time to determine whether the 'pattern' and 'significant difference criteria' were satisfied."  Def. Resp. Br. at 17.  But Defendant confuses arguments and facts.  In discussing the differential pricing authority of 19 U.S.C. § 1677f-1(d),

Universal was identifying as fact that the statutory provision does not require Commerce to consider quarterly periods as part of its differential pricing analysis or that Commerce must consider any periods of time at all.  Defendant's exhaustion claim thus is without basis.

But even if Universal's recitation of what the statutory provision does not include is construed as argument, the Court nonetheless should reject the notion that Universal failed to exhaust its administrative remedies.  When considering exhaustion, the main questions for the Court are whether Commerce was put on notice of the argument, *see Trust Chem Co. Ltd. v. United States*, 791 F. Supp. 2d 1257, 1268 n.27 (Ct. Int'l Trade 2011), or if Commerce neglected to address the issue until Commerce's final decision.  *See Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231 (Ct. Int'l Trade 2009) (noting that the party otherwise would not have had a full and fair opportunity to raise the issue at the administrative level).  In this case, the answer to both questions is yes.  Prior to the *Final Results*, Commerce did not explain why it had adopted an inconsistent approach with respect to comparing selling prices across quarters of the POR.  Despite this, Universal argued in its case brief that Commerce was not required to include quarterly time periods in its differential pricing analysis.  Citing 19 U.S.C. 1677f-1(d), Universal contended that "{t}he statutory permissive 'may' means that there are circumstances where Commerce need not consider certain criteria, such as periods of time, when evaluating whether a pattern of prices that differs significantly existed."  Universal Administrative Brief (February 10, 2023), at 5, CD 230, PD 117.  Because Commerce was aware that the statutory provision did not require Commerce to include specific time periods in its differential pricing analysis, Universal's references to "no periods of time" or "other periods of time" should not be barred.

Moreover, it was only in the *Final Decision Memorandum* that Commerce admitted that it had discretionary flexibility in its time period analysis.  Whereas Commerce asserted

categorically in its preliminary results that "{t]ime periods are defined by the quarter within the

POR based upon the U.S. date of sale," *Preliminary Decision Memorandum*"), at 11, PD 105,

Commerce changed its position in the *Final Results*, claiming for the first time that "{a}s an

initial matter, we note that there is nothing in section 777A(d) of the Act that mandates how

Commerce measures whether there is a pattern of prices that differs significantly." *Final*

*Decision Memorandum*"), at 11, PD 124.  Because Commerce only addressed its discretionary

authority in its final decision, the exhaustion doctrine does not preclude the Court's consideration

of Universal's statement that Commerce had other options available for its differential pricing

analysis that it could have adopted (i.e., Commerce could have considered other time periods or

no time periods) instead of selecting its internally inconsistent approach of comparing

Universal's selling prices across quarters of the POR.[2]

## III.    CONCLUSION

Commerce's conclusion to depart from the normal regulatory methodology of comparing

normal value to U.S. price by limiting its price comparisons only to sales made within the same

POR quarter was not an arbitrary fiction, but was an intentional decision corresponding to the

facts of this case.  And once Commerce decided that it could not compare sales across quarters to

---

[2]    Last, Wheatland claims that Universal has attempted "to graft the findings of the quarterly
cost methodology … to the differential pricing analysis," and that "taken to its logical
conclusion," and "based on Commerce's finding through its quarterly cost methodology that
there is a pattern of price differences based on time period for *all* of Universal's U.S. sales,
the agency would have to apply the A-T methodology for *all* of Universal's U.S. sales." Def.
Int. Resp. Br. at 13.  Wheatland's argument is based on a fundamental misunderstanding of
Commerce's differential pricing analysis.  Commerce performs the differential pricing
analysis on a CONNUM-specific basis, taking into consideration the Cohen's d test,
weighted-average prices, standard deviations, the ratio test, and the meaningful difference
test, all of which are described in Defendant's response brief.  *See* Def. Resp. Br. at 10-14.  It
is not Commerce's practice, nor does the law permit Commerce, to adopt a particular margin
calculation methodology simply because Commerce has adopted a quarterly cost approach.

determine dumping, then its decision to compare sales across quarters to determine the methodology to be used to determine dumping was internally inconsistent. Defendant and Defendant-Intervenor believe that it was statutorily impossible for Commerce to have done anything other than what Commerce did in determining whether there was a pattern of export prices that differed significantly among purchasers, regions, or periods of time. But such rationalization for an approach that led to the internally inconsistent comparisons is implausible, and deference to Commerce is not warranted. Defendant would have this Court reject Plaintiffs' desire for a consistent sales comparison method in favor or unreasonable, internally inconsistent cross-quarter sales comparison approaches. This, the Court should not do.

For the reasons stated above, it was inconsistent and arbitrary for Commerce to implement its differential pricing analysis by comparing Universal's selling prices across different quarters of the POR (to determine whether differential pricing existed) when Commerce separately determined as part of its quarterly cost and price analysis that it could not, and would not, compare selling prices of Universal's sales across quarters of the POR to calculate Universal's dumping margin.

Respectfully submitted,

/s/ Robert G. Gosselink
Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760

*Counsel to Universal Tube and Plastic Industries, Ltd.; THL Tube and Pipe Industries LLC; and KHK Scaffolding and Formwork LLC*

Dated: March 6, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD.; THL TUBE AND PIPE INDUSTRIES LLC; AND KHK SCAFFOLDING AND FORMWORK LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Before: Jennifer Choe-Groves, Judge |
| UNITED STATES, | ) ) | Court No. 23-00113 |
| Defendant, | ) ) | |
| and | ) ) | |
| WHEATLAND TUBE COMPANY, | ) ) | |
| Defendant-Intervenor. | ) ) | |

<u>**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**</u>

The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying Reply Brief, dated March 6, 2024, complies with the 7,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures.  The memorandum of law contains <u>3,057</u> words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

<u>/s/ Robert G. Gosselink</u>
Robert G. Gosselink
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760

*Counsel to Universal Tube and Plastic Industries, Ltd.; THL Tube and Pipe Industries LLC; and KHK Scaffolding and Formwork LLC*

Dated:  March 6, 2024