Slip Op. 24-85

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD., THL TUBE AND PIPE INDUSTRIES, LLC, and KHK SCAFFOLDING & FORMWORK, LLC,**<br><br>       Plaintiffs,<br>v.<br><br>**UNITED STATES,**<br><br>       Defendant,<br>and<br><br>**WHEATLAND TUBE COMPANY,**<br><br>       Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 23-00113 |

## OPINION

[Remanding the U.S. Department of Commerce's final results in the 2020–2021 antidumping duty review of circular welded carbon-quality steel pipe from the United Arab Emirates.]

Dated: July 26, 2024

Robert G. Gosselink, Jonathan M. Freed, and MacKensie R. Sugama, Trade Pacific, PLLC, of Washington, D.C., for Plaintiffs Universal Tube and Plastic Industries, Ltd., THL Tube and Pipe Industries, LLC, and KHK Scaffolding & Formwork, LLC. With them on the brief was Kenneth N. Hammer.

Franklin E. White, Jr., Assistant Director, and Kelly M. Geddes, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel was Brishaila Brown, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.  Vania Y. Wang also appeared.

Roger B. Schagrin and Luke A. Meisner, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Wheatland Tube Company.  Christopher T. Cloutier, Elizabeth Jackson Drake, Jeffrey D. Gerrish, Justin M. Neuman, Michelle R. Avrutin, Nicholas J. Birch, Nicholas Phillips, Saad Younus Chalchal, William A. Fennell, and Alessandra A. Palazzolo, also appeared.

      Choe-Groves, Judge:  This case presents a unique issue that Plaintiffs describe as an "internal inconsistency."  Plaintiffs argue that the U.S. Department of Commerce correctly applied one methodology to compare costs in one segment of the case, yet failed to apply that same methodology in another segment of the case, and thus there is an internal inconsistency that is not in accordance with law.  The Court agrees with Plaintiffs and remands the U.S. Department of Commerce's Final Results.

      Plaintiffs Universal Tube and Plastic Industries, Ltd. ("UTP"), THL Tube and Pipe Industries, LLC ("TTP"), and KHK Scaffolding & Formwork, LLC ("KHK") (collectively, "Plaintiffs" or "Universal") filed this action pursuant to 19 U.S.C. § 1675 contesting the final results of the U.S. Department of Commerce ("Commerce") in Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates ("Final Results"), 88 Fed. Reg. 28,483 (Dep't of Commerce May 4, 2023)

Court No. 23-00113                                                                                                    Page 3

(final results of antidumping duty administrative review; 2020–2021) and accompanying Issues and Decision Memorandum for the Final Results of the 2020–2021 Administrative Review of the Antidumping Duty Order on Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates (Dep't of Commerce Apr. 27, 2023) ("Final IDM"), ECF No. 22-5.

Before the Court is Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record. Pls.' R. 56.2 Mot. J. Agency R. ("Plaintiffs' Motion" or "Pls.' Mot."), ECF Nos. 23, 24; see also Mem. Supp. Pls.' Mot. J. Agency R. ("Pls.' Br."), ECF Nos. 23, 24. Defendant United States ("Defendant" or "the Government") filed Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment Upon the Agency Record. Def.'s Resp. Pls.' R. 56.2 Mot. J. Agency R. ("Def.'s Resp."), ECF No. 27. Defendant-Intervenor Wheatland Tube Company ("Defendant-Intervenor" or "Wheatland") filed Defendant-Intervenor's Response in Opposition to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record. Def.-Interv.'s Resp. Opp'n Pls.' R. 56.2 Mot. J. Agency R. ("Def.-Interv.'s Resp."), ECF No. 26. Plaintiffs filed Reply Brief of Plaintiffs Universal Tube and Plastic Industries, Ltd., THL Tube and Pipe Industries, LLC, and KHK Scaffolding and Formwork, LLC. Pls.' Reply Br. ("Pls.' Reply"), ECF No. 33.

**ISSUES PRESENTED**

The Court reviews the following issues:

1.  Whether Universal failed to exhaust its administrative remedies with respect to its arguments regarding Commerce's use of quarters as time periods for the comparison of sales prices in the Cohen's *d* test.

2.  Whether Commerce's determination to compare sales prices made in different quarters of the period of review under one provision of the antidumping statute while declining to utilize the same comparisons of sales prices under another provision of the antidumping statute is in accordance with law.

## BACKGROUND

Commerce conducted an administrative review for the period from December 1, 2020 to November 30, 2021. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 87 Fed. Reg. 6487, 6492 (Dep't of Commerce Feb. 4, 2022), PR 7.[1] Commerce selected Universal as one of the mandatory respondents in the investigation.[2] See Commerce's 2020–2021

---

[1] Citations to the administrative record reflect the public administrative record ("PR") document numbers. ECF No. 35.

[2] Commerce collapsed UTP, TTP, and KHK into a single entity, Universal, in a prior investigation and treated Universal as one respondent. See Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates, 81 Fed. Reg. 36,881, 36,881 (Dep't Commerce June 8, 2016) (affirmative preliminary determination of sales at less than fair value and postponement of final determination). For the current period of review, Commerce continued to collapse Universal. Commerce's 2020–2021 Antidumping Duty Administrative Review of Circular Welded Carbon-

Antidumping Duty Administrative Review of Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates: Selection of Respondents for Individual Examination, PR 22.

On December 28, 2022, Commerce published its preliminary results. <u>Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates</u> ("<u>Preliminary Results</u>"), 87 Fed. Reg. 79,862 (Dep't of Commerce Dec. 28, 2022) (preliminary results of antidumping duty administrative review; 2020–2021), and accompanying Decision Memorandum for the Preliminary Results of the 2020–2021 Administrative Review of the Antidumping Duty Order on Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates (Dec. 20, 2022) ("Preliminary Determination Memorandum" or "PDM"), PR 105.

Universal submitted an administrative case brief arguing that Commerce should ensure that its differential pricing analysis for Universal was not impacted inaccurately by comparing perceived patterns of price differences among quarters. Universal's Admin. Case Br. at 2–5, PR 117.

In the <u>Final Results</u>, Commerce continued to compare sales prices across different quarters of the period of review as part of the differential pricing analysis and determined that there was a pattern of export prices that differed significantly

---

Quality Steel Pipe from the United Arab Emirates: Selection of Respondents for Individual Examination at 1 n.2, PR 22.

across purchasers, regions, or time periods.  Final IDM at 10–11, 14–15.

Commerce did not make any changes to its determination to calculate the cost of production using a method based on the weighted-average of costs within individual quarters of the period of review.  See id. at 5–6.  Commerce calculated Universal's antidumping duty margin at 2.63%.  Final Results, 88 Fed. Reg. at 28,484.

Plaintiffs filed this action timely pursuant to 19 U.S.C. § 1675 contesting Commerce's Final Results.  See Compl., ECF No. 10.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results of an administrative review of an antidumping duty order.  The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.     Administrative Exhaustion

As an initial matter, Defendant argues that Universal failed to exhaust its administrative remedies with respect to the specific argument that "Commerce could have considered other periods of time to determine whether the 'pattern' and

'significant difference criteria' were satisfied" because Universal allegedly did not raise that issue in the administrative case brief and Defendant contends that none of the exceptions to the exhaustion requirement apply. Def.'s Resp. at 17–19. Universal counters that it did not fail to exhaust its administrative remedies because Universal put Commerce on notice of Universal's concerns about time periods during the administrative proceeding. Pls.' Reply at 8.

Before commencing suit in the U.S. Court of International Trade, an aggrieved party must exhaust all administrative remedies available to it. "In any civil action . . . the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The Court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies[.]" Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1381 (Fed. Cir. 2013).

There are limited exceptions to the exhaustion requirement. See Pakfood Pub. Co. v. United States, 34 CIT 1122, 1145, 1147, 724 F. Supp. 2d 1327, 1351–1352 (2010) ("[T]he court has waived the exhaustion requirement where it would have been futile for the party to raise its argument at the administrative level, as well as where the record indicates that . . . the agency in fact thoroughly considered the issue in question."); see also Holmes Prod. Corp. v. United States, 16 CIT

1101, 1104 (1992) ("[E]xhaustion may be excused if the issue was raised by another party, or if it is clear that the agency had an opportunity to consider it.").

In its administrative case brief, Universal argued that although 19 U.S.C. § 1677f-1(d)(1)(B) indicates that Commerce may make comparisons when there is a pattern of comparable merchandise that differs significantly among purchasers, regions, or time periods, the use of "may" implies that "there are circumstance[s] where Commerce need not consider certain criteria, such as periods of time, when evaluating whether a pattern of prices that differs significantly existed." Universal's Admin. Case Br. at 5; see 19 U.S.C. § 1677f-1(d)(1)(B). Universal argued that in the Final Results, Commerce "must limit the first part of its Cohen's *d* differential pricing analysis to a comparison of groups of sales data only for particular purchasers and regions, and *not* for time periods." Universal's Admin. Case Br. at 4–5 (emphasis in original).

On appeal before this Court, Universal asserts that Commerce should not have considered time periods at all or should have considered other periods of time in the Cohen's *d* test. Pls.' Br. at 23. Universal challenged Commerce's use of quarters within the period of review in the Cohen's *d* test. Id. Universal also noted that 19 U.S.C. § 1677f-1(d)(1)(B), in permitting Commerce to consider time periods, does not mandate how Commerce should determine the existence of

patterns of prices that differ or whether Commerce should be required to consider time periods at all.  Id.

Defendant contends that, in the administrative case brief, "Universal argued that Commerce should not include time periods in its Cohen's *d* differential pricing analysis, but did not raise the alternative argument that Commerce should use a unit of time other than quarters to assess differences in prices over time periods" or "suggest a specific alternative time period." Def.'s Resp. at 18.  The Government asserts that the Court should not "entertain Universal's arguments concerning the use of a different time period in its Cohen's *d* analysis" and that the exceptions to the exhaustion doctrine do not apply.  Id. at 18–19.

The Court holds that an exception to the exhaustion doctrine applies here because Commerce was on notice that Universal was challenging the issue of time periods when Universal argued that 19 U.S.C. § 1677f-1(d)(1)(B) neither mandates how Commerce evaluates whether a pattern of prices that significantly differ exists nor requires Commerce to consider time periods at all.  Commerce was aware of Universal's challenge to the issue of time periods and had the opportunity to fully consider the issue of time periods, including whether to use time periods at all or consider using a different unit of time (either annually, quarterly, or some other unit of time), or whether to compare sales and cost data within the same quarters, or data compared from quarter to quarter, in both the preliminary and final results of

the administrative review. Universal's failure to articulate an alternative argument that Commerce should use a specific unit of time or failure to "suggest a specific alternative time period," as Defendant asserts, did not result in a waiver of the issue on appeal, when it was clear that Universal was challenging Commerce's use of time periods for analyzing costs and prices. See Def.'s Resp. at 18. The Court concludes that Universal did not waive the issue regarding Commerce's consideration of alternative time periods in the Cohen's *d* test simply because Universal did not argue that Commerce should use a unit of time other than quarters or suggest a specific alternative time period.

## II.    Internal Inconsistency in Commerce's Determinations

Universal does not challenge Commerce's cost of production determination to consider Universal's quarterly direct material costs. Pls.' Br. at 14. Plaintiffs explain that:

> Commerce usually compares prices to a weighted-average of costs incurred throughout the entire [period of review] (i.e., annual costs). . . . But Commerce deviates from its standard methodology when it determines that there are significant changes in costs during the [period of review]. . . . Commerce concluded that record evidence showed that Universal had experienced significant cost changes (i.e., changes that exceeded 25 percent) between the high and low quarterly [costs of manufacturing] during the [period of review]; that there was linkage between Universal's changing selling prices and [costs of manufacturing] during the [period of review] such that changes in selling prices correlated reasonably to changes in unit [costs of manufacturing]; and that it therefore was necessary for Commerce to

employ an alternative costing methodology that relied on Universal's quarterly direct material costs.

Id. (citing PDM at 23–24). Notably, Plaintiffs emphasize that Commerce "limited its price comparisons for purposes of calculating dumping to sales made only within the same quarter. . . . to prevent any inter-quarter sales price comparisons." Id. at 15. The Court refers to Commerce's determination to consider Universal's quarterly direct material costs as the "same-quarter comparison," meaning that Commerce compared only sales made within the same quarters.

When calculating the cost of production, Commerce explained that its normal practice is to calculate an annual weighted-average cost based on the average of the annual cost of production for the period of review. See PDM at 23–24. Commerce stated that it deviates from the normal practice of using the annual weighted-average cost method if using the annual weighted-average cost method during a time of significant cost changes results in possible distortions. See id. at 23. Based on the cost data provided by Universal, Commerce determined that deviating from the normal practice of calculating an annual weighted-average cost was warranted. Id. To determine whether to deviate from the annual weighted-average cost method, Commerce evaluated whether (1) the changes in the cost of manufacturing during the period of review were significant and (2) whether the

record evidence showed that there was a correlation between the changes in cost of manufacturing and the sales prices during the period of review.  Id.  Changes in cost of manufacturing were deemed significant if the changes exceeded 25% between the high cost of manufacturing and the low cost of manufacturing in each quarter of a period of review.  Id.  To determine whether there was a correlation between the changes in cost of manufacturing and the sales prices during the period of review, Commerce compared the weighted-average of the sales prices within a quarter of the period of review to the corresponding cost of manufacturing within the same quarter.  Id.

Commerce determined that the record evidence established that Universal experienced significant changes in cost between the high cost of manufacturing and the low cost of manufacturing in each quarter of the period of review, and that there was a reasonable correlation between Universal's sales prices and the changes in cost of manufacturing for the period of review.  Id. at 23–24.  Commerce determined that it was appropriate to base cost of production on a calculation of a weighted-average within individual quarters of the period of review.  Id. at 24.  Commerce did not make any changes to the determination to calculate a weighted-average cost based on an average of the cost of production within individual quarters of the period of review for the cost of production analysis in the Final Results.  See Final IDM at 5–6.

In contrast to the "same-quarter comparison" with which Universal agrees, Plaintiffs challenge Commerce's determination in the Final Results as follows:

> But after having determined that it was not appropriate to calculate Universal's dumping margin by comparing the selling prices of U.S. and home market sales made in different [period of review] quarters, Commerce nonetheless did exactly that, i.e., Commerce compared the selling prices of U.S. sales made in different [period of review] quarters for purposes of its differential pricing analysis.

Pls.' Br. at 16. Commerce's Cohen's *d* test analysis compared sales prices made in different quarters of the period of review. See Final IDM at 14; PDM at 11–12 (unchanged in Final Results). The Court refers to this determination as the "inter-quarter comparison."

Universal argues that:

> In the first stage of the differential pricing analysis, Commerce applied the "Cohen's *d* test," and found that the extent to which prices in particular time periods differed from the prices of all other sales was large. . . . But, as discussed above, Commerce already had determined in this review (1) that Universal had significant cost changes between its high and low quarterly costs of manufacturing during the [period of review], (2) that there was a close linkage between Universal's changing selling prices and quarterly costs of manufacturing for the same periods, and (3) that the change in Universal's costs of manufacturing and selling prices between and among quarters was so significant that Commerce, in fact, modified its margin calculation program specifically to prevent comparisons of sales in different quarters. Having already concluded that it could not compare the selling prices of sales made in different [periods of review] quarters, it was inconsistent and contradictory for Commerce to compare the selling prices of Universal's U.S. sales across the four quarters of the [period of review] as part of its differential pricing analysis.

Pls.' Br. at 19.

Plaintiffs allege that Commerce's application of the "same-quarter comparison" and the "inter-quarter comparison" within the same administrative review was internally inconsistent, arbitrary, and contrary to law. Pls.' Br. at 16–20. Universal asserts that Commerce determined in the "same-quarter comparison" that comparing Universal's sales prices made in different quarters of the period of review would be distortive and cause an inaccurate dumping margin because the costs and prices changed so significantly from quarter to quarter such that Universal's sales in different quarters were "incomparable," and that it was arbitrary and inconsistent for Commerce to later rely in the "inter-quarter comparison" on a comparison of Universal's sales prices made in different quarters when conducting the differential pricing analysis in the same administrative review. Id. at 15; 19–20.

Defendant contends that Universal's argument is essentially that the differential pricing analysis cannot consider differences in sales prices that are caused by changes in cost of production. Def.'s Resp. at 14. Defendant and Defendant-Intervenor assert that Commerce's decision to consider changes in sales prices from quarter to quarter of the period of review for the differential pricing analysis is consistent with Commerce's practice and 19 U.S.C. § 1677b(b) because

cost determinations and the differential pricing analysis are governed by different statutes. Def.'s Resp. at 16, 19–20; Def.-Interv.'s Resp. at 12–14.

Universal counters that Defendant's characterization of Universal's argument is "an incorrect and oversimplified description of Universal's claim that adopted an internally inconsistent and arbitrary approach for calculating Universal's dumping margin in this review." Pls.' Reply at 3. Universal explains that it, "challenges only the arbitrary and inconsistent decision by Commerce" to compare sales prices made in different quarters of the period of review under one provision of the statute while refusing to compare sales prices made in different quarters of the period of review under another provision. Pls.' Br. at 22; Pls.' Reply at 3. Universal contends that:

> At its core, Universal's argument is that it is irrational, unreasonable, and inconsistent for Commerce to reject sales comparisons across [period of review] quarters to determine dumping while at the same time rely[ing] on sales comparisons across [period of review] quarters to determine the methodology to be used to calculate dumping. This internal inconsistency argument is not one that the [c]ourts have previously addressed. It is also not an issue that Commerce addressed in its <u>Final Results</u>.

Pls.' Reply at 3.

In support of its argument that Commerce improperly compared sales prices made in different quarters of the period of review (the "inter-quarter comparison") under one provision of the statute while refusing to make such comparisons (the

"same-quarter comparison") under another provision of the statute, Universal relies on NSK Ltd. v. United States, 390 F.3d 1352 (Fed. Cir. 2004). Id. at 7. In NSK Ltd., the United States Court of Appeals for the Federal Circuit ("CAFC") stated that, "Commerce's classification of repacking expenses as selling expenses is internally inconsistent with its classification of U.S. warehousing expenses and U.S. warehouse-to-customer-shipping expenses as movement expenses." NSK Ltd., 390 F. 3d at 1357. The NSK Ltd. court explained that:

> To be consistent, it would appear that Commerce should classify them as the same type of expenses, whether that be as movement expenses or as sales expenses. If Commerce wants to treat these expenses inconsistently, then . . . Commerce [must] reasonably explain[] the inconsistency and . . . not act arbitrarily.

Id. at 1358 (citing SKF USA, Inc. v. United States, 263 F.3d 1369, 1381–82 (Fed. Cir. 2001), aff'd, 332 F.3d 1370 (Fed. Cir. 2003) (vacating Commerce's decision to inconsistently define a term in two provisions of the antidumping statute because Commerce acted arbitrarily by not providing a reasonable explanation for the inconsistency)). The CAFC in NSK Ltd. held that Commerce's determination was arbitrary and impermissible because Commerce did not sufficiently explain the internal inconsistencies. Id.

19 U.S.C. § 1677f requires Commerce to explain the basis for its determinations. 19 U.S.C. § 1677f(i)(3); see NMB Sing. Ltd v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009) ("Commerce must explain the basis for its

decisions . . . [and] the path of Commerce's decision must be reasonably discernable to a reviewing court." (citing <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983))). As further required by <u>NSK Ltd.</u>, Commerce must either make consistent determinations in different provisions of the antidumping statute or provide a reasonable explanation for any inconsistencies, which Commerce failed to do in the Final IDM. <u>See</u> <u>NSK Ltd.</u>, 390 F. 3d at 1357–58.

  Similar to <u>NSK Ltd.</u>, Commerce here must either make consistent determinations, or reasonably explain any inconsistency in why Commerce should be permitted to calculate Universal's cost of production using the "same-quarter comparison," while then comparing the sales prices of U.S. sales made in different quarters using the "inter-quarter comparison" for purposes of Commerce's differential pricing analysis. Commerce's explanation that Universal's costs and prices changed so significantly from quarter to quarter that Commerce had to deviate from calculating the cost of production using an annual weighted-average cost because of possible distortions suggests that applying the "same-quarter comparison" is inconsistent with Commerce's later "inter-quarter comparison" analyzing sales prices made in different quarters for the differential pricing analysis. The Court observes that if Commerce's comparison of costs and prices would lead to distortive results because of significant fluctuations from quarter to

quarter, thus justifying the "same-quarter comparison" examining sales prices only within specific quarters, it does not follow that costs and prices from sales in different quarters should be compared across quarters (the "inter-quarter comparison") in a different segment of the administrative review.

Because Commerce did not explain why it was reasonable to apply the "inter-quarter comparison" and the "same-quarter comparison" in the same administrative review, the Court holds that Commerce's internally inconsistent determinations are not in accordance with law. The Court remands for Commerce to reconsider or provide further explanation in accordance with this Opinion.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that this case shall proceed according to the following schedule:

(1) Commerce shall file the remand determination on or before September 23, 2024;

(2) Commerce shall file the administrative record on or before September 30, 2024;

(3) Comments in opposition to the remand determination shall be filed on or before October 18, 2024;

(4) Comments in support of the remand determination shall be filed on or before November 18, 2024; and

(5) The joint appendix shall be filed on or before November 22, 2024.

                                                        /s/ Jennifer Choe-Groves
                                                        Jennifer Choe-Groves, Judge

Dated:     July 26, 2024
            New York, New York