## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD.; THL TUBE AND PIPE INDUSTRIES LLC; AND KHK SCAFFOLDING AND FORMWORK LLC, <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> WHEATLAND TUBE COMPANY, <br><br> Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge <br><br> Court No. 23-00113 |

## COMMENTS OF PLAINTIFFS UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD.; THL TUBE AND PIPE INDUSTRIES LLC; AND KHK SCAFFOLDING AND FORMWORK LLC IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION PURUSANT TO COURT REMAND

Submitted by:

Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C. 20003
Tel.: (202) 223-3760

Counsel to Universal Tube and Plastic Industries, Ltd.; THL Tube and Pipe Industries LLC; and KHK Scaffolding and Formwork LLC

Dated: October 18, 2024

**TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………………..i

TABLE OF AUTHORITIES…………………………………………………………………...ii

I.      INTRODUCTION………………………………………………………………...1

II.     COMMERCE DID NOT COMPLY WITH THE COURT'S INSTRUCTIONS………...2

    A.     Commerce Fails to Justify Its Inconsistent Approaches ............................................3

    B.     Commerce Does Not Explain Why Inter-Quarterly Comparisons Are Reasonable ...6

    C.     Commerce's Reliance on Different Contexts Is Misplaced ........................................8

    D.     The Meaningful Difference Requirement Is Not Relevant to the Remand.................9

III.    CONCLUSION..………………………………………………………………………11

# TABLE OF AUTHORITIES

**Cases**

*NSK Ltd. v. United States*, 390 F.3d 1352 (Fed. Cir. 2004)..............................................................8

**Statutes**

19 U.S.C. 1673b(e) ........................................................................................................................9

19 U.S.C. 1673d(a) ........................................................................................................................9

19 U.S.C. 1677(33) ........................................................................................................................9

19 U.S.C. 1677a(a).........................................................................................................................9

19 U.S.C. 1677a(b) ........................................................................................................................9

19 U.S.C. 1677b(f)(2) ....................................................................................................................9

**COMMENTS OF PLAINTIFFS UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD.; THL TUBE AND PIPE INDUSTRIES LLC; AND KHK SCAFFOLDING AND FORMWORK LLC IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION PURUSANT TO COURT REMAND**

**I.  INTRODUCTION**

Plaintiffs, Universal Tube and Plastic Industries, Ltd.; THL Tube and Pipe Industries LLC; and KHK Scaffolding and Formwork LLC ("Universal" or "Plaintiffs"), submit these comments in opposition to the U.S. Department of Commerce's ("Commerce's") final results of redetermination filed on September 23, 2024, ECF No. 39 ("Remand Results"), pursuant to *Universal Tube and Plastic Industries, Ltd., THL Tube and Pipe Industries LLC, and KHK Scaffolding and Formwork LLC . United States*, Court No. 23-00113, Slip Op. 24-85 (Ct. Int'l Trade July 26, 2024) ("*Remand Order*"). ECF No. 38.  Before the Court, Plaintiffs argued that it was inconsistent and arbitrary for Commerce to implement its differential pricing analysis by comparing Universal's selling prices across different quarters of the POR (to determine whether differential pricing existed) when Commerce separately determined as part of its quarterly cost and price analysis that it could not, and would not, compare selling prices of Universal's sales across quarters of the POR to calculate Universal's dumping margin.  This Court found that Commerce had not sufficiently explained its internally inconsistent approach, and remanded so Commerce could reconsider its decision or further explain the inconsistency.

Specifically, the Court instructed Commerce either to reconsider its decision or to provide a reasonable explanation of why Commerce should be permitted to calculate Universal's dumping margin using only "same-quarter comparisons," while also comparing the prices of U.S. sales made in different quarters (*i.e.*, "inter-quarter comparisons") for purposes of its differential pricing analysis.  Commerce's Remand Results, however, fail to comply with the Court's remand order.  Rather than provide an explanation of Commerce's internally inconsistent

1

approach, the Remand Results once again focus largely on how the statute does not require Commerce to determine the reasons for any pattern of export prices that differs significantly among purchasers, regions, or time periods. *See Remand Results* at 7-10. The question now is whether Commerce's response that it need not explain itself because the statute does not require Commerce to examine the reasons for differential pricing sufficiently responds to the Court's instructions. The answer is no.

Given multiple errors rendering the Remand Results unsupported by substantial evidence, the Court should remand to Commerce again and instruct Commerce not to compare selling prices across quarters as part of its differential pricing analysis (to determine whether there is a pattern of prices that differed significantly among purchasers, regions, and time periods) because this approach is inconsistent with Commerce's separate determination that it could not and would not compare Universal's selling prices across different quarters of the POR to calculate Universal's dumping margin.

## II.   COMMERCE DID NOT COMPLY WITH THE COURT'S INSTRUCTIONS

In its final results of redetermination, Commerce failed to respond adequately to the Court's July 26, 2024, Remand Order for an explanation of why it was appropriate for Commerce to apply its inconsistent "inter-quarter comparison" and the "same-quarter comparison" approaches in the same administrative review. Commerce thus failed to comply with the Court's instructions, and the Court should remand Commerce's final results of redetermination again, this time requiring Commerce not to compare U.S. prices across POR quarters (*i.e.*, not to conduct inter-quarter comparisons) as part of its Cohen's *d* differential pricing analysis to determine whether the average-to-average dumping comparison method is appropriate for this review.

### A. Commerce Fails to Justify Its Inconsistent Approaches

Commerce begins its explanation of why it was reasonable for Commerce to adopt its inconsistent "inter-quarter comparisons" and the "same quarter comparisons" in the same administrative review by asserting that "the cause(s) of price differences observed as part of the pattern requirement need not be discerned." Remand Results, at 7. Essentially, Commerce argues that it is permitted to adopt inconsistent approaches because it does not need to understand or recognize the reasons for any price differences observed among purchasers, regions, or time periods. Ironically, Commerce then follows up with a long recitation concerning the "many reasons" for significantly different prices between purchasers, regions, or time periods, including "changing production costs," "valid business purposes," and "many possible causes" before concluding that because "Commerce is not required to identify the reasons for a respondent's price differences under section 777A(d)(1)(B)(i) of the Act, then it follows that such reasons are not relevant to the price comparison analysis it performs under this section of the Act." Remand Results, at 8-9.

It bears reiterating here that Plaintiffs' appeal of the final results was not based on a causation analysis. As explained in Universal's initial 56.2 brief, and as recognized by the Court, "Universal challenges only the arbitrary and inconsistent decision by Commerce to proceed with cross-quarterly selling price comparisons under one provision of the statute while refusing to make such cross-quarterly comparisons under another." Universal Brief, at 22, ECF 23; *Remand Order*, at 15, ECF 38. Similarly, the basis of the Court's decision was that "Commerce's explanation that Universal's costs and prices changed so significantly from quarter to quarter that Commerce had to deviate from calculating the cost of production using an annual weighted-average cost because of possible distortions suggests that applying the 'same-quarter

3

comparison' *is inconsistent with* Commerce's later 'inter-quarter comparison' analyzing sales prices made in different quarters for the differential pricing analysis." *Remand Order*, at 17, ECF 38 (emphasis added).[1] Commerce's continued reliance on the absence of intent for the pricing differences found in its differential pricing analysis, *see* Remand Results, at 7-8, when no one is arguing intent and when Commerce agrees that intent is irrelevant – thus does not provide a proper basis for Commerce to justify its inconsistent same-quarter comparison and inter-quarter comparison approaches. The Court did not ask Commerce to address the reasons (or lack of reasons) for any pattern of pricing found in its differential pricing analysis.[2] Rather, the Court required Commerce to explain its inconsistency, and this Commerce did not do. It is noteworthy that the "Analysis" section of Commerce's Remand Results does not ever mention the word "inconsistent." It is doubtful that the Remand Results adequately address the Court's directive to answer why Commerce's internally inconsistent determinations are in accordance with law when Commerce does not use the word "inconsistent" even once.[3]

---

[1] *See also Remand Order*, at 17 ("Commerce must either make consistent determinations in different provisions of the antidumping statute or provide a reasonable explanation for any inconsistencies, which Commerce failed to do.")

[2] In the Remand Results, Commerce makes the same argument that it made previously before the Court. But the Court already considered Commerce's "non-causation" argument on appeal, and if such argument had merit, then the Court would not have requested Commerce to provide further explanation of its actions. As such, it is inappropriate and less-than-adequate for Commerce to base its explanation on this same argument again in the Remand Results.

[3] In its comments on the Draft Remand Results, Universal took issue with Commerce's statement that "{t}he Court remanded to Commerce its **seemingly** 'internal inconsistent determinations'" "for Commerce to reconsider or provide further explanation in accordance with this Opinion.'" Universal Comments on Draft Remand Results, at 5, *citing* Draft Remand Results, at 2 (emphasis added). Universal observed to Commerce that there was nothing equivocal about the Court's finding. The Court did not find Commerce's determinations to be "ostensibly," "apparently" or "seemingly" inconsistent. *Id.* Rather, the Court agreed with Universal that "there **is** an internal inconsistency that is not in accordance with law," *Remand Order*, at 2; *see also Remand Order*, at 10 ("Internal Inconsistency in Commerce's

Second, and more important, Commerce asserts in the Remand Results that "even if a respondent's different prices across quarters may be (partially) explained by its changing production costs across these quarters, that does not make Commerce's 'inter-quarter comparison' as part of the Cohen's *d* test in any way *distortive*." Remand Results, at 9 (emphasis added). There are several problems with Commerce's contention. First, as noted above, no one is arguing *why* Universal's export prices differed – yet, Commerce keeps going back to this topic to try to justify its differing approaches. Second, and more important, to the degree potential distortions from inter-quarter comparisons are relevant to Commerce's inconsistency analysis, Commerce has presented no factual support for its claim that its inter-quarter comparisons were not distortive. Commerce simply opines that "{b}ecause the reasons why a firm's prices differ significantly are simply not relevant, … , these reasons, whatever they may be, cannot distort {the differential pricing} analysis and its results." Remand Results, at 9. But this is not logical reasoning: B does not follow from A. Just because Commerce does not consider the reasons for price differences among purchasers, regions, or time periods does not mean that any price differences found are free from distortion. In this case, the Court specifically observed that "if Commerce's comparison of costs and prices would lead to distortive results because of significant fluctuations from quarter to quarter, thus justifying the 'same-quarter comparison" examining sales prices only within specific quarters, *it does not follow* that costs and prices from sales in different quarters should be compared across quarters

---

Determinations"). Universal also disagreed with Commerce's more explicit statement that "Commerce's limiting normal value to the same quarter as the U.S. price's date of sale, *i.e.*, a 'same quarter comparison' in its margin calculation **is not** 'internally inconsistent' or arbitrary." Draft Remand Results, at 15 (emphasis added). But rather than addressing the "inconsistency," Commerce's response in its final Remand Results was simply to delete these misstatements instead. *See* Remand Results, at n.5 and n.44.

('the inter-quarter comparison') in a different segment of the administrative review." *Remand Order*, at 17-18 (emphasis added).  Now, in the Remand Results, Commerce simply asserts that the Court's observation is wrong without providing any support from the administrative record for its unfounded assertion.[4]  Commerce's conclusion in the Remand Results thus is not based on substantial evidence.

### B. Commerce Does Not Explain Why Inter-Quarter Comparisons Are Reasonable

In the Remand Results, Commerce explains that although it generally uses the average-to-average (A-to-A) method to calculate a respondent's dumping margin, it may resort to the average-to-transaction (A-to-T) method because of concerns of distortions caused by masked dumping if two statutory requirements are met, among which is the pattern requirement, which requires Commerce to find that there existed a pattern of prices that differed significantly for comparable merchandise among purchasers, regions, or time periods.  Remand Results, at 11.  If a pattern of prices is found to exist, then Commerce considers the meaningful difference requirement to determine whether the A-to-A method can account for the differences in the respondent's U.S. pricing behavior.  Remand Results, at 12.  The main question in this case is when Commerce has determined that inter-quarter comparisons of costs and prices would lead to distortive margin results because of significant fluctuations from quarter to quarter – thus justifying a margin calculation methodology that compares selling prices only within quarters – can selling prices in different quarters be reliably compared across quarters for purposes of establishing a pattern of prices that differs significantly for comparable merchandise among time periods? *See Remand Order*, at 17-18.

---

[4] Universal quoted the same Court observation in its comments to Commerce on the Draft Remand Results, but Commerce did not address the Court's quotation from the *Remand Order*. *See* Universal Comments on Draft Remand Results, at 5.

Commerce posits that "the pattern requirement" does not itself identify masked dumping and serves only "as a canary in the coal mine to alert Commerce to the possibility that masked dumping may be distorting results of the margin calculations." Remand Results, at 12. But when Commerce has determined that it cannot compare sales between quarters in its dumping calculation because inter-quarter comparisons of prices would lead to distortions, it is problematic that Commerce nonetheless can find a pattern of prices based on those same inter-quarter comparisons to be reliable. In short, Commerce has not explained in the Remand Results why the "alert" resulting from such pattern would be accurate or dependable. Commerce claims that any discovered differences in pricing among purchasers, regions, or time periods show only whether "conditions exist where masked dumping might occur," not whether masked dumping exists. Remand Results, at 13. But Commerce cannot find that masked dumping exists unless if *first* determines that conditions exist where masked dumping might occur. And if the former finding is based on flawed data or improper comparisons, then it is not reasonable to conclude that the latter finding is legitimate.

In every antidumping proceeding, the results determined are only as good as the data used to generate them. Here, Commerce is unconcerned in the Remand Results that improper sales comparisons might lead to a *false* finding of a pattern of price differences, and fails to explain to the Court why it is reasonable to rely on a pattern of prices among quarters resulting from and established by a comparison of non-comparable selling prices. If Commerce shuts down the coal mine because its canary had a heart attack, then its warning system really was not reliable or justifiable in the first place.

### C. Commerce's Reliance on Different Contexts Is Misplaced

A fundamental aspect of Commerce's defense at the Court of its inter-quarter comparisons was its insistence that Commerce's decision to use a quarterly cost methodology was made "in a different context" from its decision to compare inter-quarterly pricing as part of its Cohen's *d* analysis. *See* Def.'s Resp. Brief, at 15, ECF 27. But not having articulated this explanation previously, the Court remanded for Commerce to explain the basis for its determination and either make consistent determinations or satisfactorily explain its inconsistencies. *See* Remand Order, at 16-17; *see also NSK Ltd. v. United States*, 390 F.3d 1352, 1357-58 (Fed. Cir. 2004). In the Remand Results, Commerce maintains its "different context" argument, but nonetheless fails to provide a reasonable explanation for why Commerce conducted inter-quarter comparisons under one provision of the statute while refusing to make such comparisons under another provision of the statute. In responding to Universal's comments on the Draft Remand Results, Commerce identifies the statutory provision, *i.e.*, section 777A(d)(1)(B)(i), under which it identifies whether there is a pattern of export prices that differs significantly among purchasers, regions, or periods of time, and Commerce claims that it is not required to identify the reasons for a respondent's price differences under that provision. *See* Remand Results, at 9-10, 21-24. But Commerce fails to identify in its analysis the statutory provision under which it adopts a quarterly cost of production and sales comparison approach. And, more importantly, Commerce does not explain where the statute requires Commerce to identify the *reasons* for adopting such a quarterly approach. Thus, although Commerce continues to rely on a "different context" approach, Commerce does not explain how the statutory provisions require a different approach.

As the Court noted, it is essential that Commerce not adopt inconsistent approaches under

8

different provisions of the antidumping statute, and it is Commerce's long-standing practice not to do so.  Once Commerce has determined that two parties are affiliated pursuant to 19 U.S.C. § 1677(33), for example, Commerce thereafter does not treat the affiliated parties differently under 19 U.S.C. § 1677a(b) (determining constructed export prices) or 19 U.S.C. § 1677b(f)(2) (transactions disregarded) even though such transactions among affiliated parties are conducted in different contexts and even though Commerce is not required under the statute to consider the reasons *why* the affiliated parties might sell to, or purchase from, each other.  Similarly, Commerce does not consider "subject merchandise" to be different when it makes critical circumstances determinations under 19 U.S.C. § 1673b(e) (*e.g.*, in considering whether there is a history of dumping of subject merchandise), when it determines export prices under 19 U.S.C. § 1677a(a), or when it makes final determinations under 19 U.S.C. § 1673d(a).  In this case, the Remand Results fail to comply with the Court's instructions because Commerce has not provided a reasonable explanation for its simultaneous and internally inconsistent same-quarter comparison and inter-quarter comparison approaches.

### D.  The Meaningful Difference Requirement Is Not Relevant to the Remand

In the Remand Results, Commerce claims that potential concerns of distortion in the margin calculations due to significant differences in production costs during the period of review are addressed as part of the comparison of U.S. price with normal value, and that "{t}he appropriate comparison methodology for a given respondent is determined as a result of the meaningful difference test, not as part of the Cohen's *d* and ratio test."  Remand Results, at 14.  But the meaningful difference requirement does not involve comparisons of costs or sales within or between quarters of the period of review, and thus does not explain why it is reasonable for Commerce to apply the inter-quarter comparison and the same-quarter comparison in the same

administrative review. There has been no allegation or claim in this case that the meaningful difference requirement portion of the Cohen's *d* analysis leads to distortive results or that its use is in any way relevant to Commerce's internally inconsistent determinations to use the inter-quarter comparison and same-quarter comparison approaches in the same administrative review. The Remand Results thus fail to explain how the meaningful difference test is relevant to the Court's decision regarding the inconsistency of Commerce's sales comparisons.

More importantly, in response to Universal's comments on the Draft Remand Results concerning this issue, Commerce incorrectly claims that "{u}nlike the calculation of normal value, the calculation of U.S. prices is not based on production costs, and, therefore, there is not {sic} concern that the inter-quarter comparison of certain U.S. prices with other U.S. prices are distorted by changing production costs and thus, such comparison need not be limited to the same quarter as with the comparison of U.S. price with normal value." Remand Results, at 25. But Commerce only adopted a quarterly comparison approach in this review because it first determined that U.S. prices were impacted by significantly changing production costs. Based on information from Universal that Commerce itself requested, Commerce found in this review (1) that Universal's costs increased significantly during the POR for subject merchandise sold to the United States and for the foreign like product sold in the home market; (2) that the top five CONNUMs sold in the home market had significant quarterly net price differences; and (3) that the top five CONNUMs sold to the United States had even greater quarterly net price differences. *See* Universal Section BCD, at Exhibit D-3, CD 43, PD 82. Furthermore, Commerce found that Universal's U.S. and home market sales prices *correlated with the COM* and the hot-rolled steel costs during the same periods. *See* Universal Section BCD, at Exhibit D-3, CD 43, PD 82. Commerce therefore found in the *Preliminary Results* that Universal's

changes in costs of manufacturing and selling prices during the POR were significant and that record evidence demonstrated that the U.S. and home market selling prices during the shorter quarterly cost-averaging periods ***could be linked accurately*** with the COP and CV during the same shorter cost-averaging periods.  *See Decision Memorandum for the Preliminary Results of the 2020-2021 Administrative Review of the Antidumping Duty Order on Circular Welded Carbon-Quality Steel Pipe from the United Arab Emirates* (Dec. 20, 2022) ("*Preliminary Decision Memorandum*"), at 23, PD 105.  It is simply false for Commerce to claim now in the Remand Results that there is no concern that the inter-quarter comparison of certain U.S. prices with other U.S. prices are distorted by changing production costs when Commerce already specifically found direct linkage between U.S. sales and cost information in its *Preliminary Decision Memorandum*, which led Commerce to rely on its quarterly cost and sales comparison approaches in the first place.  *Id.* at 23-24.

### III.   CONCLUSION

Commerce's decision in this case to depart from its normal U.S. price-normal value comparison methodology and to limit its price comparisons only to sales made within the same POR quarter was an intentional and permissible decision corresponding to the specific facts of this case.  But once Commerce decided that it would not conduct inter-quarter comparisons to determine dumping, then its decision to rely on inter-quarter comparisons as part of its differential pricing analysis to determine the methodology to be used to determine dumping was internally inconsistent.

Commerce's justifications on remand for its internally inconsistent sales comparisons cannot be ascribed to a difference in view or the product of agency expertise; nor has Commerce provided a reasonable explanation for its inconsistent approaches, as the Court instructed in its

*Remand Order*.  Because Commerce has not provided a sufficient basis for its inconsistent approaches, the Court should find that Commerce calculation of Universal's dumping margin necessarily was unsupported by substantial evidence.  Plaintiffs respectfully ask the Court to reject Commerce's Final Results of Redetermination and remand again with instructions that Commerce not compare U.S. prices across POR quarters (i.e., not conduct inter-quarter comparisons) as part of its Cohen's *d* differential pricing analysis to determine whether the average-to-average dumping comparison methodology is appropriate for this review.

          Respectfully submitted,

          /s/ Robert G. Gosselink
          Robert G. Gosselink
          Jonathan M. Freed
          Kenneth N. Hammer

          TRADE PACIFIC PLLC
          700 Pennsylvania Avenue, SE, Suite 500
          Washington, D.C.  20003
          Tel.: (202) 223-3760

          *Counsel to Universal Tube and Plastic Industries, Ltd.; THL Tube and Pipe Industries LLC; and KHK Scaffolding and Formwork LLC*

Dated:  October 18, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| UNIVERSAL TUBE AND PLASTIC INDUSTRIES, LTD.; THL TUBE AND PIPE INDUSTRIES LLC; AND KHK SCAFFOLDING AND FORMWORK LLC, <br><br>　　　　　Plaintiffs,<br>　　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant,<br><br>　　　and<br><br>WHEATLAND TUBE COMPANY,<br><br>　　　　　Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge <br><br> Court No. 23-00113 |

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**

　　　The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying comments in opposition to Commerce's remand redetermination, dated September 23, 2024, complies with the 7,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures. The memorandum of law contains 3,493 words according to the word-count function of the word-processing software used to prepare the comments, excluding the table of contents, table of authorities, and counsel's signature block.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ Robert G. Gosselink
　　　　　　　　　　　　　　　　　　Robert G. Gosselink
　　　　　　　　　　　　　　　　　　TRADE PACIFIC PLLC
　　　　　　　　　　　　　　　　　　700 Pennsylvania Avenue, SE, Suite 500
　　　　　　　　　　　　　　　　　　Washington, D.C. 20003
　　　　　　　　　　　　　　　　　　Tel.: (202) 223-3760

　　　　　　　　　　　　　　　　　　*Counsel to Universal Tube and Plastic Industries, Ltd.; THL Tube and Pipe Industries LLC; and KHK Scaffolding and Formwork LLC*

Dated: October 18, 2024